UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:25-cr-00125-SNLJ |
| JAMES JOHNSON, | ) |
| Defendant. | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**
**(INCLUDING MOTION FOR DOWNWARD VARIANCE)**

Defendant, James F. Johnson, by and through his undersigned counsel, respectfully moves that this Court grant him a downward variance in this case and impose a sentence of imprisonment not greater than 120 months.

**Summary**

The guideline sentencing range in this case is 151 months to 188 months (12 years, 7 months to 15 years, 8 months). Presentence Investigation Report ("PSR") at ¶ 79.[1]

As discussed in more detail below, Mr. Johnson is 78 years old and, statistically speaking, has a life expectancy of not more than 10 years. A sentence of up to 120 months will allow him to serve his sentence in a federal prison camp. In addition, Defendant served in the United States Army for four (4) years and was honorably discharged. And Defendant has made a significant

---

[1] As of the filing of this Sentencing Memorandum, Defendant has received only the Disclosure Copy of the PSR (Doc. 19). Paragraph references in this document are to the Disclosure Copy.

payment towards restitution and anticipates making one or more additional payments prior to sentencing. These factors in particular — and the factors set forth in the governing sentencing statute, 18 U.S.C. § 3553(a), in general — warrant a sentence below the guideline range.

## Discussion

As the Court well knows, Congress has directed the Court, when determining the appropriate punishment in a criminal case, to impose a sentence "sufficient, but not greater than necessary," to adequately punish the defendant, deter others, protect the public, and provide the defendant with needed training or treatment, including medical care. *See* 18 U.S.C.§ 3553(a). As the Court also knows, Congress has directed the Court to consider not only the sentencing guidelines, but also a number of other factors as well. The defendant's age and physical condition, military service, and pre-sentencing payment of restitution all constitute factors that support a below-guideline sentence in this case.

1. **Age/Physical Condition**

Defendant turned 78 this past August. According to the Social Security Administration's Life Expectancy Calculator, a male born on the same day as Defendant can expect to live to age 88.1. *See* Retirement & Survivors Benefits: Life Expectancy Calculator (available at www.ssa.gov/OACT/population/longevity.html) (last accessed Oct. 30, 2025). Because Defendant will be imprisoned, however, his life expectancy is lower. "[A]s a statistical matter, the life expectancy of an incarcerated person drops significantly for each year of incarceration." *United States v. Jenkins*, 854 F.3d 181, 186 n. 2 (2nd Cir. 2017). Accordingly, a sentence of 120 months in this case likely amounts to a life sentence for Defendant.

Defendant respectfully contends that 120 months should be the maximum sentence the Court should impose because a greater sentence likely will result in the Bureau of Prisons

2

("BOP") housing Defendant in a facility not appropriate for someone of Defendant's age. Specifically, if this Court's sentence does not exceed 120 months the Defendant likely would serve his sentence in a federal prison camp.[2] A male inmate, however, cannot be housed in a camp if he has more than ten years remaining to serve on his sentence. *See* "Inmate Security Designation and Custody Classification," BOP Program Statement Number 5100.08, CN-2 (Mar. 6, 2025), at Chapter 5, page 9.[3] Whatever sentence the Court imposes will take Defendant away from his family for most, if not all, of the rest of his life. Requiring Defendant to serve even a portion of his time in a facility more secure and more dangerous than a prison camp will impose punishment greater than necessary in contravention to the directive of Congress.

Defendant's age, along with his current and future medical condition, make a camp the most appropriate place for Defendant to serve his time. Approximately six to eight years ago, Defendant underwent two neck surgeries. The first procedure involved replacing three discs. The second procedure, which occurred almost exactly a year later, was an emergency operation related to a bacterial infection resulting from replacement of one of the discs. Defendant stayed in the hospital four or five days and, for a long period of time thereafter, could not fully use the left side of his body. Even today, Defendant has lingering balance issues. PSR at ¶ 61. In addition, Defendant suffered a heart attack approximately 13 years ago. While he does not

---

[2] Defendant respectfully asks the Court to recommend that he serve his sentence at the Satellite Prison Camp at FCI Leavenworth in order to facilitate family visitation. Defendant's son lives in the Springfield, Missouri area and his daughter lives in the Kansas City, Missouri area. *See* PSR at ¶ 57.

[3] Undersigned counsel has been advised that based upon the way BOP calculates time remaining on a sentence, it is possible that a defendant sentenced to 138 months or less could be housed in a camp. Defendant, however, asks the Court to rely on the published guidance rather than BOP's current practice or procedure.

currently take medication for his heart, he does tire easily, a condition which his doctor has said could be related to the heart attack or could be a function of age.[4]

Advanced age – and the decline in physical condition that accompanies it – are appropriate factors upon which to vary downward. *Cf.* USSG § 5H1.1 (2024) ("[a]ge may be a reason to depart downward in a case which the defendant is elderly and infirm").[5] *See also United States v. McFarlin*, 535 F.3d 808, 811 (8th Cir. 2008) (noting that factors such as age and health are appropriate for courts to consider when imposing a sentence); *United States v. Payton*, 754 F.3d 375, 379 (6th Cir. 2014) ("a defendant's age, specifically old age, is a relevant consideration in sentencing").

**2. Military Service**

Defendant's admirable military service also supports a below-guideline sentence. *See, e.g.*, *United States v. Davis*, 20 F.4th 1217, 1221 (8th Cir. 2021) (defendant's meritorious military career and exemplary behavior on pretrial release supported downward variance). *Cf.* USSG § 5H1.11 (2024) (discussing military service as a basis for departure). As the PSR correctly reports, Defendant served in the United States Army beginning on June 29, 1966 and received an Honorable Discharge on June 2, 1970. PSR at ¶ 74. Defendant served more than half of that

---

[4] The Disclosure Copy of the PSR does not discuss the heart attack but the undersigned, following discussions with the probation officer and the Assistant United States Attorney, expects the Final Copy of the PSR to contain this information.

[5] Recent amendments to the Sentencing Guidelines, effective November 1, 2025, delete most departure provisions, including all provisions contained in Chapter Five, Part H (Special Offender Characteristics), and most contained in Chapter Five, Part K (Departures). *See* U.S. Sentencing Comm'n, Amendments to the Sentencing Guidelines (April 30, 2025), at p. 81. Nevertheless, "[i]t is the Commission's intent that judges who would have relied upon facts previously identified as a basis for a departure will continue to have the authority to rely upon such facts, or any other relevant factors, to impose a sentence outside of the applicable guideline range as a variance under 18 U.S.C. § 3553(a)." *Id.* at p. 82.

4

time in Ethiopia, *id.,* and he received a Certificate of Achievement "for exceptionally meritorious performance of duty . . . which contributed significantly to the accomplishment of [the Asmara Field Station]'s mission." He also received a National Defense Service Medal, a Good Conduct Medal and Sharpshooter (Rifle) recognition. *Id.*

### 3. Restitution

Defendant has, prior to sentencing, made payment toward his restitution obligation. *See United States v. Oligmueller*, 198 F.3d 669, 672 (8th Cir. 1999) (extraordinary efforts at restitution justified downward departure). Specifically, Defendant and his wife owned a house and land in Perryville, Missouri. In 2025, Defendant and his wife listed the property for sale. Defendant, through his counsel, advised the AUSA of the listing and proposed, with concurrence of wife's separate counsel, that the net proceeds of the sale be split between Defendant and his wife, with Defendant's portion going directly to the Government. The Government agreed and allowed the sale to move forward. On October 8, 2025, the sale of the property closed. The title insurance company handling the sale sent to the Government the sum of $301,749.11, representing Defendant's share of the net sales proceeds.[6]

Defendant has sold some personal assets and anticipates making one or more additional payments of restitution prior to the sentencing hearing if the Court grants his motion to allow the Clerk to receive the payments. He also cooperated in giving the Government possession of an automobile which the Government moved to forfeit, the proceeds of which, after the Government sells it, he hopes and expects will also go towards restitution.

---

[6] To be technically correct, the payment of the proceeds to the Government resulted from the Government's action to have the property forfeited. More administrative steps within the Government must occur before the funds can be made available to the victims for restitution. Based upon conversations between the undersigned and the AUSA, the undersigned fully expects that those steps will be taken and the money will ultimately go to the victims.

5

### 4. Section 3553(a) Factors in General

Finally, Defendant respectfully notes that the relevant statute requires the Court to consider, when imposing sentence, both "[t]he nature and circumstances of the offense and the history and characteristics of the defendant." Defendant acknowledges and takes responsibility for the offenses he committed and understands that he will be sentenced to a term of incarceration.

As to his history and characteristics, Defendant respectfully directs the Court's attention to the letters submitted on his behalf by his wife (Exhibit 1 attached hereto), his daughter (Exhibit 2) and two family friends (Exhibits 3 and 4). Defendant respectfully believes that these letters attest to Defendant's commitment to his family. *See*, *e.g.*, Ex. 2 (Defendant "never miss[ed] a game, recital, or important moment in [his daughter]'s life"); *id.* (Defendant "has a special bond with his grandchildren and stays closely connected with them"). Defendant's separation from his wife, children and grandchildren will constitute a serious punishment to him indeed.

The letters also describe other positive attributes of Defendant which Defendant hopes the Court will consider when making its decision in this case.

### Conclusion

For the foregoing reasons, Defendant respectfully requests that the Court grant a downward variance in this case, impose a sentence of not more than 120 months imprisonment, and recommend to the BOP that Defendant serve his sentence at the Satellite Prison Camp at FCI Leavenworth.

Respectfully submitted,

*/s/ Sanford J. Boxerman*
Sanford J. Boxerman, #37436MO
Neill Schwerin Boxerman, P.C.
120 South Central Ave., Suite 725
St. Louis, Missouri  63105
Telephone: (314) 949-1864
Facsimile: (314) 949-1864
boxerman@nsbpc.com

*Attorney for Defendant James Johnson*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that this document was filed on October 31, 2025 via the Court's CM-ECF system, for service on all counsel of record and also sent via email to the probation officer at james_bearden@moep.uscourts.gov.

*/S/ Sanford J. Boxerman*